## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEFFREY CHEEK,

        Plaintiff,

        v.

THE CITY OF EDWARDSVILLE,
KANSAS, et al.,

        Defendants.

_____

ALVIN DOTY,

        Plaintiff,

        v.

THE CITY OF EDWARDSVILLE,
KANSAS, et al.,

        Defendants.

_____

**CONSOLIDATED CASES**

Case No.  06-2210-JWL

Case No.  06-2445-JWL

## MEMORANDUM AND ORDER

Plaintiffs Jeffrey Cheek and Alvin Doty were formerly employed by the police department of the defendant City of Edwardsville, Kansas.  These consolidated cases arise from their allegations that the City terminated their employment because they cooperated with an investigation by the Kansas Attorney General's office relating to public corruption among City officials.  This court previously issued a Memorandum and Order granting defendants' motion for summary judgment on their claims that the City's termination of their

employment violated their First Amendment rights as protected by 42 U.S.C. § 1983.  *See*

*generally Cheek v. City of Edwardsville*, — F. Supp. 2d —, 2007 WL 2417011, at \*1-\*11

(D. Kan. Aug. 24, 2007) (publication forthcoming).  In that order, the court also retained

under advisement the City's motion for summary judgment as to plaintiffs Cheek and Doty's

breach of contract claims for severance pay and the court directed the parties to submit

supplemental briefs on this issue.  *Id.* at \*14-\*15.  The parties have now submitted those

briefs and the court is prepared to rule on the remaining issue concerning the mayor's

authority to contract for severance pay in light of the statutory provision that "[t]he duties and

pay of the various officers shall be regulated by ordinance."  K.S.A. § 15-204.  For the

reasons explained below, the court finds that the mayor lacks the required authority, and

therefore the court will grant defendants' motions for summary judgment as to plaintiffs

Cheek and Doty's breach of contract claims.


### STATEMENT OF MATERIAL FACTS[1]

The pertinent facts are relatively simple and uncontroverted.  On March 28, 2005, the

Edwardsville City Council voted on and approved employment contracts for plaintiffs Cheek

and Doty as majors in the Edwardsville Police Department.  The minutes of the Edwardsville

City Council meeting show that the council approved the employment agreements attached

---

[1] Consistent with the well established standard for evaluating a motion for summary judgment, the following facts are either uncontroverted or stated in the light most favorable to plaintiff, the nonmoving party.

to the minutes "with revisions."  At the meeting, the City Council directed that the contracts for Majors Cheek and Doty "shadow" Chief Vaughan's contract.  It is uncontroverted that plaintiffs Cheek and Doty did not accept the exact form of the employment contracts approved by the City Council at the meeting but, instead, negotiated certain terms and conditions.

Their contracts were executed in revised form on June 23, 2005.  These contracts differed in essentially two material respects (the provisions entitled "Term of Employment" and "Severance") from the form contracts which were originally approved by the City Council.  Combined, these two provisions provided for a different severance package than the form contracts which were originally approved by the City Council.  The contracts were executed on behalf of the City by Mayor Eickhoff, but they were never approved in modified form by the City Council.

As explained in detail in the court's prior Memorandum and Order, the City terminated plaintiffs Cheek and Doty's employment in 2006.  They now assert breach of contract claims based on the City's refusal to pay them severance benefits under the terms of the contracts dated June 23, 2005.  The City contends that it is entitled to summary judgment on plaintiffs Cheek and Doty's contract claims on the grounds that those claims are not based on the form contracts approved by the Edwardsville City Council on March 28, 2005, but rather are impermissibly premised on revised versions of the contracts which were executed by Mayor Eickhoff on June 23, 2005.  The City contends that because the revised contracts contain different severance provisions than the contracts which were originally

3

approved by the City Council, Mayor Eickhoff lacked the authority to bind the City to those terms.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack

of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## ANALYSIS

The sole question presented at this procedural juncture is the mayor's authority to contract for severance pay in light of a Kansas statute entitled "Appointment of city officers;

5

duties and compensation; removal" which applies to law enforcement officers and includes the following sentence: "The duties and pay of the various officers shall be regulated by ordinance." K.S.A. § 15-204. In resolving this issue, the court once again notes that it is uncontroverted that the severance provision was not enacted as an ordinance. It is also uncontroverted that the City Council approved by resolution a form contract containing a different severance provision. Furthermore, the minutes of the City Council meeting reflect that the City Council's resolution approved the form contract "with revisions." Because the court must view the facts in the light most favorable to plaintiffs at this procedural juncture, the court will accept as true for purposes of resolving defendants' motion for summary judgment that this purported delegation of authority was intended to give Mayor Eickhoff authority to negotiate a modified severance provision. The question presented, then, is under these facts and circumstances did the mayor have the required authority to bind the City to that severance provision in the absence of approval from the City Council?

In resolving this issue, absent controlling precedent this court must attempt to predict how the Kansas Supreme Court would decide this matter. *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1180 (10th Cir. 2005) (federal court sitting in diversity must apply state law as announced by the highest state court). The court must "follow any intermediate state court decision unless other authority convinces [it] that the state supreme court would decide otherwise." *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1207 n.1 (10th Cir. 2002). The court should consider analogous decisions by the state supreme court, decisions of lower courts in the state, decisions of federal and other state courts, and the general weight

6

and trend of authority. *Progressive Cas. Ins. Co. v. Engemann*, 268 F.3d 985, 987-88 (10th Cir. 2001). Dicta from the state supreme court represents the court's own comment on the development of state law and "is an appropriate source from which this prediction may be made." *Carl v. City of Overland Park*, 65 F.3d 866, 872 (10th Cir. 1995).

Kansas courts have not addressed the applicable language from K.S.A. § 15-204. But, this statute, which applies to cities of the third class such as the City of Edwardsville, has its counterparts in the statutes applicable to cities of the first class and cities of the second class. The analogous statute governing cities of the first class provides that "no such officer shall be appointed until his or her term of office and salary have been fixed by ordinance; and all contracts of employment of auditors, accountants, engineers, attorneys, counselors and architects for any special purpose shall be authorized by ordinance." K.S.A. § 13-527. The statute governing cities of the second class provides that "[t]he council shall by ordinance specify the duties and compensation of the office holders." K.S.A. § 14-201. In applying these statutes and their predecessors, the Kansas Supreme Court has clearly and unequivocally held that any attempt to fix or change the salaries or compensation of appointed city officers by contract or in any way other than by ordinance will be held void as against public policy. *Peterson v. City of Parsons*, 139 Kan. 701, 33 P.2d 715 (1934) (city engineer was entitled to the salary set by ordinance even where he had agreed to a lower salary); *Johnson v. City of Winfield*, 75 Kan. 832, 89 P. 657 (1907) (statute requiring compensation of city attorney to be set by ordinance "must be regulated by ordinance"). Even more specifically, the Kansas Supreme Court expressly rejected the notion that the

7

level of compensation can be set by resolution, *Johnson*, 75 Kan. at 657 ("a resolution of the mayor and council will not do"), as was the case here with respect to any and all of the City Council's relevant authorizations. The clarity of the extent to which the Kansas Supreme Court has spoken on this matter concerning statutes regarding the compensation of officers in cities of the first and second class leads the court to believe that the Kansas Supreme Court would take the same view with respect to the analogous statute governing the pay of officers of cities of the third class, K.S.A. § 15-204. Consequently, the court finds that any attempt by the City to set plaintiffs Cheek and Doty's "pay" other than by ordinance is unenforceable. In other words, this could not be accomplished by Mayor Eickhoff acting alone, even if her actions complied with the City Council's resolution to enter into contracts with plaintiffs Cheek and Doty "with revisions."

The issue, then, is whether the severance package provided for in plaintiffs' employment contracts constitutes "pay" within the meaning of the statute. "The fundamental rule of statutory construction to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained." *Trees Oil Co. v. State Corp. Comm'n*, 279 Kan. 209, 228, 105 P.3d 1269, 1282 (2005). The first step in construing any statute is to consider the plain language used therein. *State v. Manbeck*, 277 Kan. 224, 227, 83 P.3d 190, 193 (2004). "If the language is plain and unambiguous the court should follow the intent expressed by the words within the statute and not look beyond them in search of some other purpose or meaning." *Phillips v. Vieux*, 210 Kan. 612, 617, 504 P.2d 196, 201 (1972). The legislature's intent behind a particular statutory provision can be ascertained from a

general consideration of the entire act.  *McIntosh v. Sedgwick County*, 282 Kan. 636, 642, 147 P.3d 869, 875 (2006).

The plain language of the statute, standing alone, does not provide much guidance in this case concerning whether the legislature intended a severance package to be encompassed in the meaning of the word "pay."  On the one hand, "pay" could be interpreted as being synonymous with wages, salary, or remuneration, Webster's Third New International Dictionary 1659 (unabridged ed. 1986), which has the connotation of payment for work actually performed such as weekly wages or a monthly salary.  On the other hand, it could also be interpreted to mean "money paid in addition to basic wages or salary" such as travel pay or "severance" pay.  *Id.*  Given these possible different interpretations, the word "pay" itself is ambiguous as to whether it should be construed to include a severance package.

A general consideration of the overall statutory scheme is more helpful to understanding the meaning of the word "pay."  As discussed previously, the statute provides that "pay" must be "regulated by ordinance."  This fact alone is significant in ascertaining the legislature's intent because the Kansas statutes set forth specific, formal procedures that must be followed in enacting ordinances.  *See generally* K.S.A. §§ 12-3001 to 12-3008. Most notably, "[a]ll ordinances of a city shall be considered at a public meeting of the governing body."  *Id.* § 12-3001.  Additionally, once an ordinance has been passed and signed it must be published in the city newspaper and maintained in the city clerk's ordinance book.  *Id.* §§ 12-3007 and 12-3008.  Similar procedural requirements do not exist for resolutions.  Thus, one of the key features of the required ordinance procedures is their public

nature.  Consequently, it appears that the rationale for requiring "pay" to be set by ordinance is to ensure that the public is privy to the decisions made by their elected city officials concerning amounts that are to be paid to city officers.

Indeed, this point was emphasized by the Kansas Supreme Court in its reasoning concerning the requirement that compensation must be set by ordinance.  In *Johnson*, the court stated:

> The statute says the city shall specify the compensation of the city attorney by ordinance. . . . Again it says the compensation of all city officers except justices of the peace and assessor shall be regulated by ordinance. . . . This limits the power of the city to one method of dealing with the compensation of a city attorney.  It must act by ordinance.  A city attorney is bound to know this, and he cannot perform ordinary legal services for the city and then claim extra compensation on the theory of an implied contract or estoppel. . . . The "general consensus of six councilmen" that a city attorney should have extra pay will not do.  The statement of six councilmen to a city attorney to "go ahead," and they will "see that he gets just compensation for his services," will not do, and a resolution of the mayor and council will not do.  **The bars to the city treasury cannot be let down in any such way.**

75 Kan. at 832, 89 P. at 657 (emphasis added).  In other words, even if the mayor and city council agree about the level of compensation to be paid to city officers, that agreement is insufficient because the ordinance requirement exists for the protection of city funds.  The public is entitled to a particular level of notice concerning amounts that are to be paid to city officers and, undoubtedly, this is to ensure the accountability of elected city officials who are responsible for determining that pay.  Otherwise, if the city council and/or mayor were to act in a less formal manner concerning the pay of city officers, such as by way of a resolution, the public would not necessarily be notified of those actions.

10

In sum, it appears that by requiring city officers' "pay" to be "regulated by ordinance," the Kansas legislature intended to provide a mechanism for public oversight of the extent to which city funds are paid to city officers.  In light of this purpose, there is no material distinction between city funds being spent on city officers' "pay" in the form of weekly or monthly wages or salaries or their "pay" in the form of severance benefits.  Either way, the "pay" implicates the public's interest in overseeing the level of integrity exercised by elected officials with respect to spending city funds on city officers.  Consequently, the court predicts that the Kansas Supreme Court would construe the term "pay" in § 15-204 to include the severance package at issue in this lawsuit.  Because this severance provision was not regulated by ordinance, then, it is unenforceable and defendants' motion for summary judgment on this claim is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that remaining aspects of defendants' motions for summary judgment (doc. #95 in Case No. 06-2210 and doc. #27 in Case No. 06-2445), which were previously retained under advisement as to plaintiffs' breach of contract claims, are now granted.

**IT IS SO ORDERED** this 1st day of October, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

11